**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CARLO D'AURELI,**

                           **Plaintiff,**

vs.                                                 1:17-cv-00363
                                                      (MAD/DJS)

**ROSE HARVEY,** *in her official capacity as Commissioner of the New York State Office of Parks, Recreation, and Historic Preservation,*

                           **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**THE DENIGRIS LAW FIRM PLLC**      **STEPHEN G. DENIGRIS, ESQ.**
P.O. Box 14643
Albany, New York 12212-4643
Attorney for Plaintiff

**OFFICE OF ATTORNEY GENERAL**      **JOHN F. MOORE, ESQ.**
**STATE OF NEW YORK - ALBANY**
The Capitol
Albany, New York 12224
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     On April 2, 2017, Plaintiff Carlo D'Aureli filed a complaint against Defendant Rose Harvey, the Commissioner of the New York State Office of Parks, Recreation and Historic Preservation, seeking declaratory and prospective relief under 42 U.S.C. § 1983 for violating the Law Enforcement Officers Safety Act. *See* Dkt. No. 1 at ¶¶ 54-55. On June 9, 2017, Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dkt. No. 14.  Currently before the Court is Defendant's motion to dismiss.  For the following reasons, Defendant's motion is granted in part and denied in part.

## II. Background

**A.     Law Enforcement Officers Safety Act**

On July 22, 2004, Congress enacted the Law Enforcement Officers Safety Act ("LEOSA"), which subsequently was codified under 18 U.S.C. § 926B and § 926C.  LEOSA was designed to "override State laws and mandate that retired and active police officers could carry a concealed weapon anywhere within the United States."  H.R. Rep. No. 108-560 at 3 (2004).  Prior to LEOSA, states had inconsistent laws with regards to allowing current and former law enforcement officers to carry concealed weapons within their borders.  *See id.* at 11.  While some states recognized conceal-carry permits of law enforcement officers from other states, many did not.  *See id.*  Supporters of the bill believed that LEOSA would allow retired law enforcement officers "to defend themselves outside their own State from criminals whom they have arrested." *Id.* at 4.

LEOSA establishes that qualified retired law enforcement officers are allowed to carry concealed firearms across state lines.  LEOSA states that

> (a) Notwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified retired law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b).

18 U.S.C. § 926C(a).

Under LEOSA, an individual is a qualified retired law enforcement officer if they separated in good standing after at least ten years as a law enforcement officer; met the standards for qualification in firearms training set forth by their former agency; were not under the

2

influence of drugs or alcohol; were not prohibited by federal law; and did not have a mental health problem that would make then unqualified. *See* 18 U.S.C. § 926C(c).

As to identification, LEOSA allows separated officers to satisfy the identification requirement through one of two ways. Under § 926C(d)(1), a former officer can use a photographic identification issued by their former agency indicating that the person is a former law enforcement officer and that the individual has within the past year met the agency's qualifications for an officer to carry the same type of firearm as the concealed firearm. Alternatively, under § 926C(d)(2), a former officer can use a photographic identification issued by the agency that identifies them as a former officer and a certification establishing their firearms certification.

**B.     Carlo D'Aureli and Retirement Identification**

Plaintiff Carlo D'Aureli ("Plaintiff") served as a state park police officer for the New York State Office of Parks, Recreation and Historic Preservation (the "OPRHP") for over twenty-one years. *See* Dkt. No. 1 at ¶ 30. On December 1, 2015, Plaintiff submitted his retirement documentation to Defendant Rose Harvey ("Defendant"), the Commissioner of the OPRHP to take effect on December 30, 2015. *See id.* at ¶ 39. After filing his retirement papers, Plaintiff began preparing the necessary documentation to obtain a "good guy" letter so he could obtain certification to carry a concealed weapon under § 926C(d)(2). *See* Dkt. No. 1-1 at 2. Plaintiff alleges that he was qualified under 18 U.S.C. § 926C(c). *See* Dkt. No. 1 at ¶¶ 32-36.

After filing his request, Plaintiff was told that the department would not issue him a "good guy" letter. His superior stated that because he had not served twenty-five years, he would not be issued a retired-law-enforcement identification card and, therefore, would not be eligible to carry

3

a concealed firearm under LEOSA. *See* Dkt. No. 1-1 at 2. Plaintiff temporarily pulled his retirement paperwork hoping to resolve the issue. *See id.*

On January 4, 2016, Chief David Herrick of the New York State Park Police distributed Division HQ Memo: #2016-1 ("Memo 2016-1") to commanding officers promulgating a policy regarding the issuance of retirement identification. *See* Dkt. No. 1-2 at 2. The memorandum stated that

> Retirement Identification Card & Shield will be issued to those members:
> A.   Who served continuously from their date of entrance and become eligible to retire after completing 25 years of service as a New York State Park Police Officer.
> B.   Who served continuously from their date of entrance and is facing mandatory retirement due to age.
> C.   Who served continuously from their date of entrance and whose service is terminated due to a permanent disability.

*Id.*

On January 31, 2016, after over twenty-one years of service, Plaintiff retired at the age of fifty-eight. *See* Dkt. No. 1-3 at 2. Chief Herrick affirmed that Plaintiff wold not be eligible for a retirement identification card as he was not facing mandatory retirement and served less than twenty-five years. *See id.*

On February 20, 2016, Plaintiff wrote a letter to Defendant appealing Chief Herrick's decision. *See id.* On March 22, 2016, Defendant denied the appeal. *See* Dkt. No. 1-5 at 2. Defendant stated that the standards set forth in sections A and B of Memo 2016-1 had been "in effect since 2002" and "provide[d] a reasonable cutoff for determining eligibility for receipt of the Retirement Identification Card and Shield." *Id.*

On December 14, 2016, Plaintiff's counsel wrote a letter to Defendant stating that OPRHP's policy, as described in Memo 2016-1, contravened LEOSA. *See* Dkt. No. 1-6 at 2-3.

The letter requested that Defendant's "office undertake a review of the directive and have the Park Police issue [Plaintiff] his retirement member identification card and also issue his 'good guy' letter so he [could] exercise his rights under federal law." *Id.* at 4.  On February 23, 2017, OPRHP denied the request, stating "LEOSA does not mandate that State officers modify existing policies or procedures to help implement the federal statute."  Dkt. No. 1-7 at 2.

### III. DISCUSSION

**A.     Standard of Review**

*1. Motion to Dismiss Under Rule 12(b)(1)***:** *Subject Matter Jurisdiction*

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

### *2. Motion to Dismiss Under Rule 12(b)(6): Failure to State a Claim*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when

6

the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

**B.      Subject Matter Jurisdiction**

Defendant first moves to dismiss on the grounds that the Court lacks subject matter jurisdiction. *See* Dkt. No. 14. However, Defendant's brief is unclear as to which of its arguments for dismissal justify a Rule 12(b)(1) dismissal. Of Defendant's four reasons that the Court should dismiss this case, only the first argument, that LEOSA is not actionable under § 1983, could be construed to be relevant to the issue of subject matter jurisdiction. *See* Dkt. No. 14-3 at 10.

However, determining whether a plaintiff can "obtain redress through Section 1983" is a determination of the merits, not of jurisdiction. *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015). Thus, determining whether LEOSA is actionable under § 1983 has no bearing on whether the Court has subject matter jurisdiction. As the Court sees no other bases to challenge subject matter jurisdiction, the motion to dismiss pursuant to Rule 12(b)(1) is denied.

**C.      Failure to State a Claim**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Section § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). "It follows that if a plaintiff has not sufficiently pled an injury to a federally conferred right, then the plaintiff cannot hold a [state official] liable for an injury to that

7

right under § 1983" *Mpras v. District of Columbia*, 74 F. Supp. 3d 265, 270 (D.D.C. 2014) (citing *Graham v. Connor*, 490 U.S. 387, 394 (1999)).

Plaintiff's complaint asserts that Defendant's refusal to issue identification violates LEOSA and is actionable under 42 U.S.C. § 1983. *See* Dkt. No. 1 at ¶ 54. Defendant's motion to dismiss argues that there is no private right of action under § 926C, that LEOSA permits states to set the criteria for issuing identification, that LEOSA does not compel Defendant to issue retired law enforcement identification cards, and that § 926C does not preempt state law. *See* Dkt. No. 14-3 at 2.

A statutory right is either positive or negative. *See* Lynn A. Baker, *The Prices of Rights: Toward a Positive Theory of Unconstitutional Conditions*, 75 Cornell L. Rev. 1185, 1217 (1990). A negative right aims "to keep the government from infringing [on] certain individual liberties," while a positive right obligates "the government to provide individuals certain goods or services." *Id.* The text of LEOSA is framed in terms of a negative right. The statute states that a qualified individual *may* carry a concealed firearm. *See* 42 U.S.C. § 926C(a). "Nothing in the text or structure of the statute bestows . . . an explicit right to obtain the identification required under § 926C(d) . . . ." *Johnson v. N.Y. State Dep't of Corr. Serv.*, 709 F. Supp. 2d 178, 184 (N.D.N.Y 2010). "Congress expressly left the authority to issue the identification described in subsection (d) in the hands of the relevant state agency." *Id.* (citing 18 U.S.C. § 926C(d)).

> Subsection (d) contains numerous references to actions that must be performed and qualifications that must be determined "*by the agency* from which the individual retired" or "*by the State* in which the individual resides" or "by a certified firearms instructor that is qualified to conduct a firearms qualification test for active duty officers *within the State*" or "by any law enforcement agency *within that State*."

8

*Mpras*, 74 F. Supp. 3d at 270.  These repeated reference to actions taken by the state suggest that Congress intended to leave the standards and procedures for issuing the required photographic identification required by subsection (d) to the states.  *See id.*; *see also Johnson*, 709 F. Supp. 2d at 186.  Simply put, the text of LEOSA "is bereft of any indication that Congress, on passing the Act, intended to mandate that the various States implement a procedure for issuing certifications in accordance with 18 U.S.C. § 926C(d)." *Zarrelli v. Rabner*, No. C-199-05, 2007 WL 1284947, *2 (N.J. Super. Ct. May 3, 2007).

*Johnson*, *Mpras*, and *Zarrelli* are not alone in reaching the conclusion that LEOSA does not create a federal burden upon the States to issue identification.  Federal and state courts have repeatedly concluded that there is no enforceable right to identification under LEOSA as implementation has been left to the discretion of the States.  *See, e.g.*, *Friedman v. Las Vegas Metro. Police Dept.*, No. 2:14-CV-0821, 2014 WL 5472604, *5 (D. Nev. Oct. 24, 2014) ("Rather than affirmatively requiring states to issue concealed carry licenses to retired police officers, LEOSA merely permits retired officers who already possess a concealed-carry permit to bring a concealed firearm across state lines"); *Foley v. Godinez*, 62 N.E.3d 286, 293 (Ill. App. 1st Dist. 2016).

Recently, a Court in the Northern District of Illinois held that LEOSA does not obligate states to issue identification qualified law enforcement officers identification.  In *Henrichs v. Illinois Law Enforcement Training & Standards Board*, No. 15-cv-10265, 2018 WL 572708 (N.D. Ill. Jan. 26, 2018), the plaintiffs alleged that their rights under LEOSA and the Fourteenth Amendment were violated when the defendants refused "to verify that they qualify for concealed carry permits as retired law enforcement officers." *Id.* at *1.  The plaintiffs claimed that their rights under LEOSA were violated because the defendants had "adopted a narrower definition of

9

'qualified retired law enforcement officer' than has LEOSA, thereby depriving [them] of the 'right to carry concealed firearms' that LEOSA guarantees them." *Id.* at *2. In granting the defendants' motion to dismiss, the court found that the clear text of "LEOSA grants a person concealed carry rights only if that person (1) is a 'qualified retired law enforcement officer' as defined by LEOSA *and* (2) 'is carrying the identification required by subsection (d).'" *Id.* at *3 (emphasis in original). Since the plaintiffs were denied the identification by their former agencies under subsection (d), the court found that they had no concealed carry rights under LEOSA, even though they may be considered "qualified retired law enforcement officer[s]" under LEOSA. *Id.* ("Although Congress may have intended that LEOSA benefit *some* retired law enforcement officers, it did not intend that LEOSA benefit *our* Plaintiffs, for while they may be 'qualified retired law enforcement officers' under LEOSA, they do not have the required agency-issued identification") (citations omitted).

Plaintiff argues that the D.C. Circuit's decision in *DuBerry v. District of Columbia*, 824 F.3d 1046 (D.C. Cir. 2016), abrogated *Mpras*. *See* Dkt. No. 15 at 29. However, this conclusion would require extending *DuBerry* well beyond its holding.

In *DuBerry*, the plaintiffs were a group of former corrections officers who were seeking firearms certification so they could satisfy the identification requirements under LEOSA. *See id.* at 1048. The D.C. Department of Corrections refused to issue the plaintiffs letters under the belief that LEOSA did not apply to former corrections officers. *See id.* The plaintiffs filed a complaint under § 1983 alleging the defendant violated their rights by not complying with LEOSA. *See id.* The district court granted a motion to dismiss, concluding that LEOSA did not create an enforceable right under § 1983 after applying the framework from *Blessing v. Freestone*, 520 U.S. 329 (1997). *Duberry v. District of Columbia*, 106 F. Supp. 3d 245, 270

(D.D.C. 2015), *rev'd and remanded*, 824 F.3d 1046 (D.C. Cir. 2016).  However, a divided panel on the D.C. Circuit reversed this decision after concluding that LEOSA was actionable under § 1983.

Although the majority reversed the decision, the opinion did not determine whether LEOSA created a right to identification.  *See DuBerry*, 824 F.3d at 1057.  Instead, the decision was limited to two determinations.  The first was that a state could not "revise the statutory definition of 'qualified retired law enforcement officers' in a manner" that deprived the plaintiffs of their statutory rights.  *Id.*  The second was that LEOSA could be actionable under § 1983.  *See id.*  However, the majority decision explicitly stated there was "no occasion to consider" the implications of whether LEOSA would require states "to issue the photographic identification in subsection (d)(1) & (2)(a)."  *Id.*  Thus, while *DuBerry* allows plaintiffs who believes their rights under LEOSA have been violated to bring their claims via a § 1983 action, the decision is explicitly silent as to the rights Plaintiff has asserted.  *See Foley*, 62 N.E.3d at 293-94.  Therefore the Court rejects Plaintiff's contention that *Mpras* was abrogated by *DuBerry*.

Plaintiff also attempts to distinguish *Johnson*, *Foley*, *Zarrelli*, and *Friedman* from the case at hand.  *See* Dkt. No. 15 at 26-27, 29-30.  Plaintiff argues that there are distinguishing facts to each of these cases such that they are not applicable to the case at hand.  While the Court recognizes that each of these cases has distinguishing facts as to make them distinct, these differences do not change the relevance of these decisions.  First, although the claim in *Johnson* was brought under an inherent cause of action theory, not through § 1983, the decision included a rigorous analysis of the rights created by the statute and determined that LEOSA does not obligate states to issue identification.  *See Johnson*, 709 F. Supp. 2d at 186-87.  Second, while *Foley* was an action aimed at obtaining a *writ of mandamus*, the court denied the writ on the

11

grounds that LEOSA did not place an affirmative obligation on the states. *See Foley*, 62 N.E.3d at 293-94. Third and finally, although *Zarrelli* and *Friedman* both interpreted LEOSA within the context of state statutory frameworks, their analyses still required them to address state obligations under LEOSA. *See Friedman*, 2014 WL 5472604, at *5; *Zarrelli*, 2007 WL 1284947, at *2. Therefore, while Plaintiff is correct that these cases presented different fact patterns and procedural postures, these differences do not undermine their persuasiveness and applicability to the case currently before the Court.

Therefore, the Court must conclude that LEOSA does not create an obligation for states to issue identification to retired officers and Defendant's motion to dismiss is granted. Given this decision, the Court declines to address Defendant's arguments that LEOSA is not actionable under § 1983 and that it does not preempt state law.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 14) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to dismiss for failure to state a claim (Dkt. No. 14) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 2, 2018
       Albany, New York

/s/ Mae A. D'Agostino
Mae A. D'Agostino
U.S. District Judge